ALMA GWYNN,

*Plaintiff and Respondent,*

vs.

ARTHUR GWYNN,

*Defendant and Appellant.*

(No. 2356; June 24th, 1947; 182 Pac. (2d) 815.)

For the plaintiff and respondent there was a brief submitted by C. W. Axtell of Thermopolis, Wyoming and John C. Pickett of Cheyenne, Wyoming and oral argument by Mr. Pickett.

For the defendant and appellant there was a brief submitted by Oliver W. Steadman of Cody, Wyoming and Lin I. Noble of Thermopolis, Wyoming.

## OPINION

RINER, Chief Justice.

This case seeks the review of a portion of a judgment of the district court of Hot Springs County in an action for divorce, alimony, property settlement, and for other relief brought by the plaintiff and respondent Alma Gwynn against the defendant, Arthur Gwynn and now the appellant. The judgment, so far as it is drawn in question by this appeal, may be summarized as follows: It granted the plaintiff a divorce from the defendant, ordered that a certain sum, to wit, $1500 in cash be paid by the defendant to the plaintiff, that he pay the attorney for the plaintiff a fee of $250 for his services in the case, and that two pieces of real estate designated:

"Lots 17 and 18 in Block 38 in the Original Townsite of the Town of Thermopolis, Hot Springs County, Wyoming, together with the buildings thereon and the furn-

iture and fixtures therein be and hereby is set over to Alma Gwynn, the Plaintiff, as her sole and absolute property;"

These lots and buildings were owned by the defendant in said town, prior to the divorce action.

The notice of appeal states that the appeal is taken from only that part of the judgment which directs the money payments to plaintiff by defendant and sets over to her the real estate, all as recited above. The parties were married September 26, 1944. There are no children. The defendant husband was over 80 years of age when he was married to plaintiff wife and she at that time was over 60 years of age.

The parties apparently lived together about six months and then defendant who had for many years previously been afflicted with tuberculosis of the right hip, fell and broke his left hip. Since that time he has been either bedfast or confined to a wheel chair. It seems also that the plaintiff after the marriage learned from medical examination and advice that she was subject to high blood pressure. Both parties appear, so far as can be told from the cold record, to be dependent on relatives for care and support.

In attempted compliance with the judgment aforesaid, the defendant on April 15, 1946 paid into court the sum of $677.27 which he states, is all the property he possessed or owned at the time the divorce action was instituted. This payment is in accord with a paper filed by counsel for the defendant, the first paragraph of its statement being verbatim:

"Comes now Arthur Gwynn, defendant, in the above entitled matter and for the purpose of complying with the judgment and decree of Court rendered on the 15th day of March, A. D., 1946, so far as within his ability to do so, herewith pays to the Clerk of the District Court of Hot Springs County, Wyoming, the sum of Six Hundred Seventy-Seven and 27/100 Dollars to be

distributed in satisfaction of said judgment as the Court may direct."

If this payment has been used to satisfy the judgment of the court in part as therein suggested, it admits of considerable doubt that any action of this court would, to some extent at least, affect the judgment from which the appeal is taken as it might be regarded as extinguished pro tanto. See Williford vs. Williford, 162 Illinois Appeals 24. The judgment aforesaid was rendered on March 15, 1946 and was entered in the court's journal on March 21 following. The notice of appeal is dated April 1 of that year and receipt of a copy thereof was also acknowledged by plaintiff's counsel on that date. It was filed in the Clerk's office on the same day.

The point is advanced and this seems to be the main contention of the appellant, that the court below abused the judicial discretion reposed in it under Section 3-5916 Compiled Statutes of Wyoming, 1945 (§ 35-118 Revised Statutes of Wyoming 1931) which reads:

"In granting a divorce, the court shall also make such disposition of the property of the parties, as shall appear just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens imposed upon it, for the benefit of the wife and children, and court may also decree to the wife reasonable alimony out of the estate of the husband having regard for his ability, and to effectuate the purposes aforesaid, may order so much of his real estate or the rents and profits thereof, as is necessary to be assigned and set out to the wife for life, or may decree a specific sum to be paid by him to her, and use all necessary legal and equitable processes to carry its decrees into effect."

We are unable to see the force of this contention in view of the situation which is disclosed by this record as follows: On direct examination in response to questions by his own counsel and without objection, defend-

ant and appellant stated that he recalled an occasion after the accidental fall, described above, had injured his left hip and when he was staying at the ranch home conducted by defendant's children and where he was being cared for by his daughter, when plaintiff and her then attorney, Mr. Harnsberger of Lander, came to see him. The defendant then testified as shown by the following questions and answers:

". Tell the Court the circumstances of that at that time.

"A. Well, they come down. She had requested divorce a couple of letters down there. I told her all right to get her attorney. I says I think we can settle out of court; if we can't, we'll let the Judge settle it. I think if you will move up we can get this done in 30 days. It went on a few days, and finally Mr. Harnsberger and her came down, and told me what they came for, and we argued about what I was to pay her, and finally agreed on $1500.00 in money, and she take lots 19 and 20, the one that the house is on, and they seemed to be perfectly satisfied when they left. Then it went on, I didn't hear any more. I wasn't informed whether she wanted any more money; all I got was an excuse the house might burn down; it ran along. I finally told my counsel to tell them that I had that money there, for them, and if they wanted it, they better take it, because if they waited much longer, it might not be there.

"Q. Did Mr. Harnsberger prepare an agreement in accordance with your understanding?

"A. Yes, sir, the bargain was he was to go right off and write them up. I asked him to stop on his way and see Mr. Noble, and he said he would. I told him Mr. Noble really hadn't been employed, but he was my attorney in everything usually, and he did, and he prepared them. I was sent a copy, and they were distributed around, but they were never signed up."
Thereafter on cross examination he also said:

"Q. At the time that Mr. Harnsberger and Mrs. Gwynn were talking to you at your ranch, you say you agreed to give her $1500.00 and a couple of lots in town, did you?

"A. Yes, sir.

"Q. And pay Harnsberger's attorney fee?

"A. Yes, sir."

It will be readily seen that the trial court fashioned its judgment substantially in accord with what the defendant thought at that time was an equitable property settlement. Evidently plaintiff then thought the same but apparently changed her mind, as stated in the brief of the respondent herself, yet she has not appealed from the judgment now before us. We find no abuse of discretion by the district court.

It is also urged that the court erred in declining to modify upon defendant's application a temporary restraining order enjoining the defendant from disposing of his property of any kind during the pendency of the divorce action, directing payment to plaintiff of $125 per month for support and maintenance during that period and also directing the defendant to pay plaintiff $100 for costs and suit money. This order was made on January 12, 1946 by the district court commissioner in the absence of the presiding judge from the County of Hot Springs. The divorce action itself had been commenced on that day.

It is said that the district court commissioner had no power to make such an order, as defendant was given no opportunity for a hearing before it was made. The answer to this contention would appear to be that the matter was thereafter heard on February 4, 1946 upon the motion of the defendant to modify the order of the commissioner, said hearing having been conducted by and before the district court itself and thereupon the order of the commissioner was directed to "be and remain in full force and effect until the further order" of the court. Thus the defendant evidently had the benefit of a full hearing before the district court and the order made by the commissioner was adopted

as its own. It may be noted also that no exception seems to have been taken by the defendant to this action of the court. The final judgment when rendered as stated above dissolved this restraining order.

We can not overlook the condition in which we find this record without a word of caution to counsel in connection therewith. Section 3-5406, Wyoming Compiled Statutes, 1945 provides relative to the preparation and contents of a record on appeal that:

"In civil causes appealed to the supreme court under the provisions of this Act (§§ 3-5401—3-5415), the clerk of the district court shall prepare a record on the appeal which shall consist of the original or certified copies of the pleadings, motions, demurrers, instructions given and refused, verdict and findings, certified copies of the journal entries, including the entry of the judgment or order appealed from, and the notice of the appeal in the cause, securely attached together in their chronogical order, and if a transcript of the testimony is prepared and filed, and is brought upon the appeal, the transcript with the exhibits and documentary evidence contained therein or attached thereto as a part thereof, shall also form a part of the record on appeal. *When so prepared, the whole of such record shall be paged and numbered consecutively, and shall be certified to by the clerk of the district court as true and correct and filed in his office;* and the specifications of error, when filed, shall be authenticated by the certificate of said clerk and attached to the record by him and shall thereupon become a part of the record." (Italics supplied)

The record in the case at bar is brought here in two volumes. Each is quite small. No particular reason appears why all the material in both of them could not have been included in a single volume. The first volume contains exactly 57 pages numbered consecutively as the law directs, and concerning it, the clerk of the district court in his final certificate states after reciting that it is "true, complete, and correct":

"I further certify that said record contains a certified copy of all Journal entries entered in the Journal of the above named court in said cause, including the entry of the Judgment entered therein, and Notice of Appeal, all securely attached together in chronological order, together with a transcript of the testimony taken on the trial of said cause, and filed in my office by W. V. Dolezal, official court reporter of the Fifth Judicial District; that the whole of said record has been paged and numbered consecutively, and consists of Pages 1 to 57, inclusive."

The second volume purports to be a "transcript of the testimony" in the divorce action, certified as true and correct by the official court reporter only. No certificate of the clerk of the district court is affixed to this volume. If the certificate of the clerk to Volume I be construed literally, it is decidedly questionable whether this court could properly consider the material in Volume II consisting of some 87 pages, as a part of the record on appeal, and under the authority of our previous decisions, George Bolln Co. vs. Freeman, 42 Wyo. 375, 294 Pac. 1110 and Baus vs. Baus, 60 Wyo. 44, 145 Pac. 2d 241 precluding us from considering any questions of fact arising upon the evidence in the case. However, it is not necessary to determine the point at present. We may say, however, that when the record on appeal is brought here in two or more volumes as is sometimes necessary on account of bulk, the extra volume or volumes should be so identified by the clerk's final certificate that there can be no doubt at all that they are intended to be included in his certificate and to be considered as one record.

It is our view that the judgment of the District Court of Hot Springs County in this case should be affirmed with costs. There should also be added to the judgment, an allowance to the plaintiff for attorney's

fees in this court in the sum of $150 which in view of all the circumstances in the case, we consider as equitable and proper.

*Affirmed.*

BLUME, J., and KIMBALL, J., concur.