# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 120

APRIL TERM, A.D. 2013

*October 2, 2013*

JOHN ALLEN MOORE,

**Appellant**
**(Defendant),**

**v.**

S-12-0163

THE STATE OF WYOMING,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Natrona County*
*The Honorable Catherine E. Wilking, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Diane M. Lozano, State Public Defender, and Elisabeth M.W. Trefonas, Assistant Public Defender, Argument by Ms. Trefonas.

*Representing Appellee:*
> Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General; Christyne M. Martens, Assistant Attorney General; Darrell D. Jackson, Faculty Director; Emily N. Thomas, Student Director; and Marci Crank Bramlett, Student Intern, of the Prosecution Assistance Program. Argument by Ms. Martens.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    A Natrona County jury found John Allen Moore guilty of a single count of felony larceny, and Moore perfected a timely appeal from the district court's judgment and sentence.  We affirm.

## ISSUES

[¶2]    Moore raises three issues which we restate as follows:

> 1.    Was Moore's trial attorney constitutionally ineffective in failing to challenge juror CW for cause?
>
> 2.    Did the district court abuse its discretion by failing to grant Moore's motion for a new trial based on the claim that juror BT was mentally incompetent?
>
> 3.    Does the cumulative effect of the foregoing alleged errors warrant reversal of Moore's conviction?

## FACTS

[¶3]    While returning to work from her lunch break on June 28, 2011, Nicole Crowson drove past some property that her father owned west of Casper.  She saw two men with a silver-blue pickup truck pulling a white trailer parked near the front of the property.  They appeared to be looking at some items her father was trying to sell.

[¶4]    The following afternoon she again passed the property and noticed that a structure door which her father kept locked was standing open.  Upon closer inspection, she saw that the padlock securing the door had been cut off.  After phoning her father, who was then working in North Dakota, she walked around the property and discovered that a 1977 Chevrolet Silverado one-ton pickup truck and a 2002 PJ sixteen-foot car-hauling trailer had been taken.  Ms. Crowson promptly reported the theft to the Natrona County Sheriff's Office.

[¶5]    The following day, an investigator from that office stopped at the Crowson property four times.  On each of the first three visits he observed what appeared to be fresh tire tracks.  On the fourth, he encountered Moore, who was driving a blue Dodge pickup pulling a trailer.  Ms. Crowson, who met the investigator at the property, identified Moore as one of the men she had seen at the property two days earlier. She also identified his truck and trailer as those she had seen at that time.  When questioned at the scene, Moore admitted taking the Silverado and selling it to a local salvage yard for fifty

1

dollars. However, he repeatedly denied taking the missing trailer. Moore was arrested at that time on another warrant and transported to the Natrona County Sheriff's Office.

[¶6] The denials concerning the trailer unraveled when deputies called one of Moore's friends and asked her to drive to the Crowson property from her small ranch north of Casper to pick up Moore's dog. The deputies also questioned her about the stolen trailer. On her way home after retrieving the dog, she noticed a trailer matching the deputies' description parked on private property along Salt Creek Highway. On the trailer was a red farm tractor that appeared be similar to one that Moore had told her he planned to purchase.

[¶7] Moore's friend reported what she had found to the sheriff's office. The tractor was later identified by its previous owner as the one she and her husband had recently sold to Moore. The owner of the property on which it was found, another of Moore's friends, identified the tractor and the stolen trailer as those he had given Moore permission to park there at the end of June 2011. Mr. Crowson identified the trailer as the one that had been stolen from him.

[¶8] Moore was charged with one count of felony larceny under Wyo. Stat. Ann. § 6-3-402(a) and (c)(i). He pled not guilty, and his case proceeded to trial before a jury of twelve on February 6, 2012. During voir dire, prospective juror CW, who is a former Casper police officer and a current municipal court bailiff, expressed doubt as to whether he could be fair and impartial in Moore's case.[1] CW had prepared a warrant for Moore's arrest for nonpayment of fines as one of his duties as a bailiff. He felt that experience would color his judgment about Moore's guilt and stated that he didn't think "it would be fair to Mr. Moore for me to try to judge his guilt or innocence on this one."

[¶9] The district judge commented that CW's concerns did not appear sufficient to excuse him for cause. Defense counsel did not challenge CW for cause, and the prosecutor made no effort to rehabilitate him. Both parties passed the array for cause and CW was seated as the sole alternate juror. The judge excused him before sending the jury out to deliberate on a verdict, and he therefore did not participate in any of the deliberations.[2]

---

[1] The discussion took place at the bench, and the remainder of the venire was therefore not exposed to it.

[2] Moore notes in passing that D.I., an assistant district attorney, was in the venire. D.I. indicated that he could be fair and impartial. We observe that Wyo. Stat. Ann. § 7-11-105(b) (LexisNexis 2013) makes all grounds for challenges for cause in civil cases applicable in criminal cases, and that Wyo. Stat. Ann. § 1-11-203(a)(iii) (LexisNexis 2013) provides a challenge for cause to anyone who is a creditor or a "servant" or agent of a party. It would seem that an assistant district attorney could fall into any of these categories. No challenge for cause was made, however. According to Moore, D.I. would have been an alternate juror. Wyoming Rule of Criminal Procedure 24(e) provides for alternate juror challenges separate from those allotted for the regular jurors, and so Moore could not have used the peremptory challenge he used against D.I. against a regular juror. We do not address this further as it has not been urged as a basis for

[¶10]  The morning after the jury returned its verdict at the end of the two-day trial, the district court bailiff relayed some information to the court regarding juror BT.  This led the court to hold a "disclosure hearing" to advise the prosecutor and Moore's attorney about the information the bailiff had provided.  The bailiff reported that three or four jurors expressed frustration that BT was making "off-the-wall" comments unrelated to the case, thereby disrupting deliberations.  They characterized him as an "idiot" or "mental" and complained that they were unable to "get him to stay with them" and communicate.  The bailiff also noted that BT had asked her whether the circular items in the ceiling above the jury box were cameras, and had made a perplexing statement that he didn't bring the judge any gifts, that he had brought her "a whole bunch of gifts yesterday, and she thanked [him] all day long."

[¶11]  The judge indicated that she met with the jurors after accepting their verdict and encountered a very jovial atmosphere with no sense of tension or ill will between any of the jurors.  She thanked them for their service and asked if any of them had any questions.  She recalled BT asking about whether the objects in the ceiling were cameras and joking with him "a little bit back and forth" about it.  The judge speculated that BT's comments about having gifts for her was a pun referring to her thanking the jurors not for "presents," but instead for their physical "presence," referring to their timeliness and service on the jury.

[¶12]  Two weeks later, on February 22, 2012, Moore filed a motion for a new trial based on the information which had come to light at the disclosure hearing, alleging that he was denied his constitutional right to a jury trial because BT was incompetent, depriving him of a jury of twelve.[3]  The record contains no response from the State, no request by Moore for a hearing on the motion, and no ruling on it by the district court.  On appeal, Moore and the State agree that the motion was deemed denied fifteen days after it was filed under W.R.Cr.P. 33(b).[4]

---

claiming error, and would have made no difference, as explained in the discussion with regard to juror C.W.

[3] The transcript of the disclosure hearing is not in the record, but Moore's motion for a new trial indicates that trial counsel had ordered the transcript and intended the reporter to file it.  Moore's appellate counsel brought the certified transcript before this Court as an exhibit to her motion for a limited remand, which we denied.  She did not seek to supplement the record, but the attorneys for both parties liberally referred to the transcript in their respective briefs.  As we have done previously under similar circumstances, we will consider that transcript. *BB v. RSR*, 2007 WY 4, ¶ 9, 149 P.3d 727, 732 (Wyo. 2007); *Meuse-Rhine-Ijssel Cattle Breeders of Canada, Inc. v. Y-Tex Corp.*, 590 P.2d 1306, 1308 n.4 (Wyo. 1979).

[4] The time frame for a ruling could have been extended to sixty days from the date the verdict was rendered under Rule 33(b), but obviously it was not.

**STANDARDS OF REVIEW**

[¶13] Claims of ineffective assistance of counsel involve mixed questions of law and fact, which this Court reviews *de novo*. *Osborne v. State*, 2012 WY 123, ¶ 17, 285 P.3d 248, 252 (Wyo. 2012). The Court reviews the denial of a motion for a new trial for an abuse of discretion. *Gunnett v. State*, 2005 WY 8, ¶ 15, 104 P.3d 775, 779 (Wyo. 2005).

**DISCUSSION**

*Ineffective Assistance*

[¶14] Moore's ineffective assistance of counsel claim requires him to establish from the record that his trial counsel failed to function as a reasonably competent attorney, and that he was thereby prejudiced in some particular respect. The latter requires a showing that there is a reasonable probability that the result of the trial would have been more favorable to him absent deficient performance of counsel. This Court may dispose of Moore's claim solely on the ground that he has made an insufficient showing of prejudice. *Jenkins v. State*, 2011 WY 141, ¶ 6, 262 P.3d 552, 555 (Wyo. 2011) (quoting *Dettloff v. State*, 2007 WY 29, ¶¶ 18-19, 152 P.3d 376, 382-83 (Wyo. 2007)).

[¶15] Moore's ineffective assistance claim is based upon his trial attorney's failure to challenge juror CW for cause. The prejudice caused by such a claimed error is evaluated no differently than that claimed to be caused by a district court's improper denial of a challenge for cause. In these cases, we require an appellant to make two showings to demonstrate prejudice. He must first show he had to exercise a peremptory challenge to remove a juror who should have been excused for cause, and that he was thereby deprived of a peremptory challenge against a juror he would have removed. Secondly, he must show that the jury which actually decided his case and convicted him was biased or partial because he did not have the additional challenge. *Klahn v. State*, 2004 WY 94, ¶¶ 18-20, 96 P.3d 472, 481-83 (Wyo. 2004). Moore's failure to meet the second requirement is both obvious and fatal to his claim, and so we do not analyze the record as to the first.

[¶16] As noted above, CW was an alternate juror, and the district court excused him before the jury was sent to the jury room to deliberate. He was not part of the jury that actually decided Moore's case, and even if he was biased against Moore, he had no opportunity to influence the verdict.

[¶17] Moore suggests that CW might have influenced other jurors before they were instructed to deliberate. The trial judge repeatedly admonished the jurors that they were not to discuss the case among themselves during the trial. We presume that jurors follow the instructions the court gives them. *Willoughby v. State*, 2011 WY 92, ¶ 11, 253 P.3d 157, 161 (Wyo. 2011); *Janpol v. State*, 2008 WY 21, ¶ 24, 178 P.3d 396, 405 (Wyo.

2008); *Brown v. State*, 953 P.2d 1170, 1177 (Wyo. 1998); *Rubio v. State*, 939 P.2d 238, 243, 245 (Wyo. 1997); *Burke v. State*, 746 P.2d 852, 857 (Wyo. 1987). Nothing in the record suggests that any of them did not do so. Moore has therefore failed to demonstrate that any claimed deficiency in his attorney's performance prejudiced him, as he identified no bias or partiality on the part of any of the jurors who rendered the verdict.

### *Motion for a New Trial*

[¶18] When we review the denial of a motion for a new trial, this Court does not decide whether the district court reasonably could have granted the motion, but rather whether it acted reasonably in not granting the motion. If it could have done so, we affirm even when the court provides no reason for its decision or, as in this case, when it denies the motion through inaction. *King v State*, 780 P.2d 943, 947-48 (Wyo. 1989).[5]

[¶19] Moore's motion and his argument on appeal rest entirely on the notion that the information presented at the disclosure hearing held on the day after the return of the verdict established that juror BT was mentally incompetent and should not have served on the jury.[6] However, the law precludes inquiring into a post-verdict allegation as to the mental incompetence of a juror, or setting aside a verdict based only upon such an allegation. There is an exception if there is clear, substantial, and strong evidence that the juror suffered from a mental condition that affected his ability to understand and deliberate upon the issues presented at trial. This exception has been held to require proof that the juror was adjudicated insane or mentally incompetent shortly before or after the trial. *United States v. Dioguardi*, 492 F.2d 70, 78-80 (2d Cir. 1974) (cited with approval in *Tanner v. United States*, 483 U.S. 107, 118-19, 125, 107 S. Ct. 2739, 2746-47, 2750, 97 L.Ed.2d 90 (1987); *United States v. Hall*, 536 F.2d 313, 323 (10th Cir. 1976)).

[¶20] Moore relied upon a few jurors' nonspecific comments to the bailiff indicating that they could not understand the point of some of BT's statements made during their deliberations, his own statements to the bailiff, and the district judge's observations. The

---

[5] Wyoming Rule of Criminal Procedure 33 is unique in containing a time limit after which motions for new trial are deemed denied. The record does not reflect any reason that no decision was rendered within fifteen days after the motion was filed, or why the time for decision was not extended up to sixty days from the verdict as the rule permits. Nothing suggests that the motion was even brought to the trial judge's attention.

[6] Moore's counsel did not ask for a hearing at which testimony might have been obtained from the trial jurors, including BT. The motion indicated that the juror's statements alone "beg[ged] the question" as to his competence. Although judges are understandably reluctant to further inconvenience jurors who have already served through a trial by bringing them back to interview them on these kinds of issues, it is done when necessary. *See, e.g.*, *Smith v. State*, 2008 WY 98, ¶ 23, 190 P.3d 522, 529 (Wyo. 2008). Whether a juror is competent to testify on these topics under W.R.E. 606(b) is an interesting question not raised in this appeal. *See* 3 Christopher B. Mueller and Laird C. Kirkpatrick, *Federal Evidence* §§ 6:16, 6:17 and 6:22 (3d 2007).

district court could reasonably have concluded that this showing fell short of raising any significant concern under Wyo. Stat. Ann. § 1-11-101(a)(ii) (LexisNexis 2013), which required that BT be in possession of his natural faculties, of ordinary intelligence, and not possessed of a mental infirmity that prevented him from carrying out his duties as a juror to be eligible to serve. The court could therefore reasonably have decided that such evidence did not warrant vacating the jury verdict and granting Moore a new trial. We find that the judge would have acted well within her discretion had she denied the motion for a new trial, and that withholding or failing to render a decision until the motion was deemed denied under W.R.Cr.P. 33 was not therefore an abuse of discretion.

### *Cumulative Error*

[¶21]   Moore cannot prevail on his claim of cumulative error because the purpose of the cumulative error doctrine is to address whether the cumulative effect "of two or more individually harmless errors" had the potential to prejudice him to the same extent as a single reversible error. *Eaton v. State*, 2008 WY 97, ¶ 105, 192 P.3d 36, 79 (Wyo. 2008). That doctrine does not apply here, as this Court has identified no potential error which could have affected the fairness of the trial, and has found no error in denial of the motion for a new trial under the "deemed denied" provisions of Rule 33. *Harlow v. State*, 2003 WY 47, ¶ 88, 70 P.3d 179, 206 (Wyo. 2003).

## CONCLUSION

[¶22]   Moore has failed to establish that he could have been prejudiced in any way by his attorney's failure to peremptorily challenge alternate juror CW. The district court did not abuse its discretion in allowing his motion for a new trial to be deemed denied after hearing the bailiff's report relating to juror BT. The cumulative error doctrine is inapplicable to this case. We therefore affirm the judgment and sentence of the district court.